Case 2:17-cv-14388-JEM Document 1 Entered on FLSD Docket 11/08/2017 Page 1 of 19

FILED by ___LH___ D.C.

Nov 7, 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. – FT. PIERCE

**United States District Court
for the Southern District of Florida**

# 17-14388-CV-MARTINEZ/MAYNARD

| | |
|---|---|
| MICHAEL MILLER | No. _____ |
| Plaintiff, | |
| vs. | COMPLAINT FOR: |
| MR. COOPER FKA NATIONSTAR MORTGAGE, LLC, | FRAUDULENT MISREPRESENTATION |
| | VIOLATIONS OF FDCPA |
| Defendant. | INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS |
| | DECLARATORY JUDGMENT |
| | TRIAL BY JURY DEMANDED |
| | HEARINGS IN CHAMBER |

COMES NOW, Michael Miller, Plaintiff, the undersigned acting *Pro se,* proceeding to make the above captioned Complaint, and hereby shows cause:

### JURISDICTIONAL STATEMENT

1. This Court has subject matter jurisdiction over this action because it presents one or more federal questions, 28 U.S.C. § 1331.

2. Jurisdiction of this Court also arises under 28 U.S.C. § 1332(a) as there is diversity of citizenship among the parties and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.

1

3. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the subject matter of the claims asserted by the Plaintiff in the State of Florida in this action because those claims are also related to the claims asserted by the Defendant that they form part of the same case or controversy, and because those claims arise out of the same transactions or occurrences as the action brought by the Plaintiff.

4. Jurisdiction of this Court also arises under 15 U.S.C. § 1692 for Defendant's violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA").

5. Therefore, Plaintiff wishes to invoke this Honorable Court's federal question jurisdiction as Plaintiff is bringing claims directly under Federal Statutes and Constitutional provisions as Plaintiff's state claims turn on a matter of Federal law.

6. This Court has personal jurisdiction over the Defendant because the Defendant has transacted business in this District and the State of Florida and because the Defendant has committed acts herein detailed in this District and the State of Florida.

7. At all times relevant to this action, Plaintiff has owned the Property located at 5519 SE Reef Way, Stuart, Florida 34997, also hereinafter referred to as the "Property".

## VENUE

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES
## PLAINTIFF

9. Michael Miller, Plaintiff, hereinafter also referred to as "Miller" is a natural person that owns the real property in Stuart, Florida which is subject to the controversy. Plaintiff is a citizen of the State of Florida. The Plaintiff has suffered damages due to the actions of the Defendant which are detailed herein.

2

## THE DEFENDANT

10.     Defendant MR. COOPER fka Nationstar Mortgage, LLC ("Nationstar"). Plaintiff is informed and believes, and thereon alleges that at all relevant times Nationstar Mortgage LLC is a mortgage loan services provider. Nationstar Mortgage LLC is organized and existing under the laws of Delaware, with a principal place of business in Lewisville, Texas.

## INTRODUCTION

11.     This is an action brought by Plaintiff for declaratory judgment and equitable relief, and for compensatory, punitive, and general damages

12.     Plaintiff, Michael Miller, disputes the title and ownership of the real property in question, which is the subject of this action, in that the originating mortgage lender, and others alleged to claim ownership of Plaintiff's Promissory Note and Mortgage, have unlawfully sold, assigned and/or transferred his ownership and security interest in a Promissory Note and Mortgage related to Plaintiff's property, and thus, do not have lawful ownership or a security interest in Plaintiff's home which is further described in detail herein.

13.     Plaintiff, disputes the marketability, presence of cloud on title and alleged interest of the Defendant with regard to the real property in question, which is the subject of this action, in that the originating mortgage lender, and others alleged to claim ownership of Plaintiff's Promissory Note and/ or Mortgage, have unlawfully sold, assigned and/or transferred his ownership and security interest in a Promissory Note and Mortgage related to the Plaintiff's property, and thus, do not have lawful ownership or a security interest in Plaintiff's home which is further described in detail herein.

14.     During the financial crash of 2008-2009, over 60 million home loans were sold by originating lender banks to investment banks to be securitized[1] in a complex series of billions of

transactions. This process, known as securitization, has also been discovered to have occurred in the case of Plaintiff's home loan which originated June of 1998.

15. The securitization procedure for selling of the loans was to create a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit ("REMIC") Act were observed, and whereby the Issuing Entities and Lenders would be protected from either entity going into bankruptcy. In order to achieve the desired 'bankruptcy remoteness" numerous "True Sales" of the loans had to occur, in which the loans were sold and transferred to the different parties to the securitization.

16. Recently, upon learning of issues that were known to cloud title on property, Plaintiff began to query his alleged lender as to identify with regard to the lawful owners of his loan and determine whether Plaintiff would ever receive clear and marketable title to his own home once it was paid off.

17. The subsequent responses from the alleged lender(s) were vague and ambiguous and did not answer the bona fide and lawful questions of Plaintiff, thereby raising Plaintiff's concerns about marketability, title and ownership of Plaintiff's property

18.. Plaintiff was illegally and wrongfully foreclosed upon and Defendant illegally sold Plaintiff's property and transferred the title and are proceeding to illegally evict Plaintiff thereby compounding wrongful foreclosure with an illegal sale and eviction.

19. Defendant's collection activities resulting in a wrongful foreclosure of Plaintiff's property is contrary to Florida recordation statutes, U.S. TITLE CODES (U.S.C), FDCPA, UNIFORM COMMERCIAL CODE (U.C.C.) statues as outlined herewith throughout and by Plaintiff's causes and claims

---

[1] Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms. The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bind holders which were expected to be relatively safe.

4

20. The Plaintiff has exhausted the available administrative remedies and now turns to this Honorable Court to adjudicate this matter.

## STATEMENT OF THE CASE

21. Plaintiff hereby invokes common law in this matter pursuant to Article Three, Section Two of the US Constitution, see *Callan v. Wilson*, 127 U.S. 540, (1888) "And as the guaranty of a trial by jury, in the third article, implied a trial in that mode, and according to the settled rules of common law".

22. Plaintiff contends the required conditions precedent to commence a foreclosure action have not been met as Plaintiff's loan was not in default, and the parties required to declare any alleged default have never done so.

23. Plaintiff signed a Security Instrument (MORTGAGE) **EXHIBIT 1,** in favor of America's Wholesale Lender, dated April 14, 2005.

24. America's Wholesale Lender has not been recognized as a Corporation in numerous venues including State Courts, State Courts of Appeal, U.S. District Courts and U.S. Courts of Appeal. The summary of the argument is America's Wholesale Lender was a fictitious entity not a corporation under the State and United States Constitutions, it had no legal existence (standing) and cannot sue or defend.

25. Any action under the law or execute any legally binding documents in that fictitious name is void. A legal entity is a natural person, or a corporation or other business structure formed under the laws of a specific state. A trade name is not a legal business structure. As such the alleged assignees have no jurisdiction because America's Wholesale Lender's with no legal capacity cannot assign the note and the mortgage. Therefore, subsequent assignments, transfers, sale and appointment of servicers cannot use the judicial foreclosure procedures.

5

26.     Defendant and its agents collectively breached and violated Plaintiff's Mortgage by and through their participation in a wrongful foreclosure of Plaintiff's property, absent critical and viable proof that the Defendant had standing, is lawful holder/owner of the Note and Mortgage, and has acquired and maintained lawful, as opposed to simple, possession.

27.     The Defendant's illegal actions are including, but not limited to their actions in the various foreclosure actions against Plaintiff and are the cause and source of Plaintiff's damages.

28.     Through the actions of the Defendants, the Plaintiff's title has been slandered and he could not and will be unable to obtain clear title without resorting to extraordinary measures.

29.     The Defendant has deliberately sought to consummate a foreclosure and sale of Plaintiff's property and home in absolute defiance of numerous provisions of the various Florida Revised Statutes and Federal law.

## BACKGROUND

30.     On or about April 14, 2005, Plaintiff entered into a consumer credit transaction with America's Wholesale Lender by obtaining a $456,100 mortgage loan secured by the Property.

31.     Defendant Nationstar filed a Verified Complaint on July 24, 2014, alleging that Nationstar was the holder of the Note.

32.     Attached to the Complaint was a Lost Note Affidavit, executed by Luis Nunez, Document Custodian for Choice Legal Group, Plaintiff's counsel. In that Affidavit, Mr. Nunez stated that Choice Legal Group received the original Note on November 30, 2009, from Plaintiff or Plaintiff's authorized agent. A copy of the Note was attached.

33.     A Final Judgment on Foreclosure was entered on August 30, 2017 and the Property was sold on October 1, 2017 to Defendant for $77,800.00.

34. *The 14th Amendment to the United States Constitution, <u>the Interests Protected: "Life,</u> <u>Liberty and Property".</u>* To have a property interest in the constitutional sense, the Supreme Court held, it was not enough that one has an abstract need or desire for a benefit or a unilateral expectation. He must rather "have a legitimate claim of entitlement" to the benefit. "Property interests, of course, are not created by the Constitution. Rather, they are created, and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972) (Emphasis added)

35. The Fourth Amendment of the U.S. Constitution originally enforced the notion that "each man's home is his castle", secure from unreasonable...seizures of property by the government:

> *The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.*

While Plaintiff is not asserting government agencies are behind Defendant's wrongful foreclosure, Plaintiff points out that Defendant is using government records and benefits associated with commencing a foreclosure action as a means to wrongfully seize Plaintiff's property. Defendant's actions of creating fraudulent public/county records and then using those records as a basis for commencing a foreclosure action (unjust enrichment) injures the Plaintiff and obfuscates the public record.

36. Plaintiff likewise asserts that under the Fifth Amendment of the U.S. Constitution:

> "...nor be deprived of life, liberty, or property, without due process of law..."

7

Here again, Plaintiff contends Defendant's actions are an attempt to deprive Plaintiff of his constitutional rights, by "stealing" Plaintiff's property. Defendant's intentional misrepresentation and failure to disclose transfers and sales of Plaintiff's Mortgage and Note to other parties and release of liability without Plaintiff's knowledge, while utilizing the benefits of a bank friendly legal environment is unconscionable.

37. Plaintiff hereby invokes case common law in this matter pursuant to Article Three, Section Two of the US Constitution, see *Callan v. Wilson*, 127 U.S. 540, (1888) "And as the guaranty of a trial by jury, in the third article, implied a trial in that mode, and according to the settled rules of common law".

## FIRST CAUSE OF ACTION

## FRAUDULENT MISRPRESENTATION

22. In order to have standing to foreclose in Florida, the party asserting the right to foreclose has to prove that he is the holder of the Note at the time the complaint was filed.

23. Defendant fraudulently made a misrepresentation of fact that it was the holder of the Note. Plaintiff's loan was identified in the Wells Fargo Mortgage Loan Trust, LLC 2010-RR1 (hereinafter "Wells Fargo Mortgage Loan Trust, LLC 2010-RR1"). The loan is being serviced by Defendant.

24. This is explained in the Chain of Title Analysis and Mortgage Fraud Investigation. Prepared By: Mortgage Compliance Investigations LLC. **EXHIBIT 2**, excerpts below:

> 5. The beneficial interest (ownership) of the Miller Mortgage has been recorded in the Official Records of Martin County Recorder's Office as being in the name of America's Wholesale Lender, the Original Lender of the loan dated April 14, 2005. However, America's Wholesale Lender sold all ownership interest in the Miller Intangible Obligation to the Wells Fargo Mortgage Loan Trust, LLC 2010-RR1 Trust shortly after the April 14, 2005 signing. Interest in the Miller Intangible Obligation is held in the Wells Fargo Mortgage Loan Trust, LLC 2010-RR1 Trust, and the payments under the Miller Intangible Obligation are disbursed to the investors of Wells Fargo Mortgage Loan Trust, LLC 2010-RR1 Trust.

8

6. By the Wells Fargo Mortgage Loan Trust, LLC 2010-RR1 Trust purchasing the Miller Intangible Obligation and doing with it whatever was done, the Wells Fargo Mortgage Loan Trust, LLC 2010-RR1 Trust was exercising rights of ownership over the Miller Mortgage Loan and the payment stream. By exercising rights of ownership over the Miller Mortgage Loan and the payment stream, the Wells Fargo Mortgage Loan Trust, LLC 2010-RR1 Trust was making a claim of rights to all three parts of the Miller Mortgage Loan, a claim which is misplaced.

7. The Miller Mortgage Loan only exists through the tangible instruments creating it, the Miller Note and the Miller Mortgage. The sale of the rights to the Miller Intangible Obligation to the Wells Fargo Mortgage Loan Trust, LLC 2010-RR1 Trust without stripping away the rights to the Miller Intangible Obligation from the rights to the Miller Note could only be accomplished with the accompanying negotiation of the Miller Note and the accompanying assignment of the Miller Mortgage to the Wells Fargo Mortgage Loan Trust, LLC 2010-RR1 Trust which is a legal impossibility. Whereas the Trust as a standalone party has not lawfully been conveyed the Miller Note, much less been filed of record as a secured creditor.

8. The Wells Fargo Mortgage Loan Trust, LLC 2010-RR1 Trust has made and continues to make claims of interest in the rights to the Miller Intangible Obligation and exercise those claims. To exercise claims of rights to the Miller Intangible Obligation, proper assignments of the Miller Mortgage should have been accomplished. The Wells Fargo Mortgage Loan Trust, LLC 2010-RR1 Trust is acting as if proper assignments of the Miller Mortgage have been accomplished.

56. There is a document purporting to be an "Corporate Assignment of Mortgage", dated June 24, 2014 and filed in the Official Records of the Martin County Recorder's Office on July 22, 2014 as ins# 2467078, signed by Melissa Kersenbrock as Assistant Secretary and notarized June 24, 2004 by Kelsey E. Craig, Nebraska Notary Commission #N/A, where Wells Fargo Bank, National Association S/M/B to Wachovia Bank, National Association F/K/A First Union Bank of Connecticut F/K/A Centerbank Mortgage Company by Nationstar Mortgage LLC Its Attorney-In-Fact grants, assigns, and transfers to Nationstar Mortgage LLC all beneficial interest under a Mortgage dated April 14, 2005 and filed in the Official Records of the Martin County Recorder's Office on April 15, 2005 as ins# 1830640.

66. Nationstar Mortgage LLC, the Assignee, is the Servicer of the Miller Intangible Obligation for the Wells Fargo Mortgage Loan Trust, LLC 2010-RR1 Trust. Under the Consumer Credit Protection Act Title 15 USC Chapter 41 § 1641(f) any treatment of the Servicer of the Miller Intangible Obligation as an Owner of the Miller Intangible Obligation would be in violation of Federal Statute. As this assignment to Nationstar Mortgage LLC would be in violation of Federal Statute if Nationstar Mortgage LLC was not the Owner of the Miller Intangible Obligation, Nationstar Mortgage LLC's claim of rights to the Miller Intangible Obligation is either a fraudulent claim or Nationstar Mortgage LLC's actions under the claim of ownership are in violation of Federal Law.

9

> 15 USC Chapter 41 § 1641(f) Treatment of servicer
> *(1)* In general
> *A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.*
> *(2)* Servicer not treated as owner on basis of assignment for administrative convenience
> *A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.*

*See* Exhibit 2 at paragraphs 5-8, 56 and 66. *See also* Affidavit of Joseph R. Esquivel Jr. attached hereto as **EXHIBIT 3** at paragraphs 12-17.

25. Defendant made the representation that it was the holder of the Note for the purpose of inducing Plaintiff to refrain from acting in reliance upon the representations. Defendant knew that the representation was false as Defendant is the servicer of the loan for the Wells Fargo Mortgage Loan Trust, LLC 2010-RR1. The representation was made for the purpose of defrauding the Plaintiff out of his property, Plaintiff relied on the misrepresentation that Defendant had the right to foreclose. Plaintiff had the right and was justified to rely on the misrepresentation as he, as any average person, would not believe that Defendant would lie about their rights to foreclose.

26. As a result of reliance on Defendant Plaintiff has suffered the loss of his property. The amount of damages cannot be ascertained with certainty at this time, but exceed $75,000.00.

## SECOND CAUSE OF ACTION

## VIOLATIONS OF 15 U.S.C. §1692 et seq., the Fair Debt Collection Practices Act

27. On or about April 14, 2005, Plaintiff entered into a consumer credit transaction with America's Wholesale Lender by obtaining a $456,100 mortgage loan secured by the Property.

28. Defendant has violated various provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA) as follows:

29. Defendant is a debt collector as defined in 15 U.S.C. §1692a (6).

    (6) The term "debt collector" means any person who...regularly collects or attempts to collect, directly or indirectly, debt owed or due or asserted to be owed or due another...

30. Defendant Nationstar filed a Verified Complaint on July 24, 2014, alleging that Nationstar was the holder of the Note. The purported Assignment of Deed of Trust to Defendant occurred on June 24, 2014 one month before the Complaint was filed. The Complaint alleges a date of default of June 1, 2009, well before Defendant was purportedly assigned the Deed of Trust.

31. Attached to the Complaint was a Lost Note Affidavit, executed by Luis Nunez, Document Custodian for Choice Legal Group, Plaintiff's counsel. In that Affidavit, Mr. Nunez stated that Choice Legal Group received the original Note on November 30, 2009, from Plaintiff or Plaintiff's authorized agent. A copy of the Note was attached.

32. Para. 6 of the Affidavit of Lost Note states; *"Plaintiff's Counsel cannot reasonably obtain possession of the original Promissory Note because its whereabouts cannot be determined after diligent search."*

33. The NOTE cannot reasonably be obtained to the possession of Plaintiffs due to the *prima facie* facts, the NOTE and MORTGAGE were sold *shortly after April 14, 2005 to Multiple Classes of the Wells Fargo Mortgage Loan Trust, LLC 2010-RR1*.

11

34. Defendant filed the Complaint with the knowledge that Wells Fargo Mortgage Loan Trust, LLC 2010-RR1 was the holder of the Note and that it was sold to the trust shortly after execution of the Note on April 14, 2005. Nationstar knew, or should have known, that a Wells Fargo trust was the holder of the Note as Defendant Nationstar was the servicer of the Note having purchased the servicing rights from Wells Fargo.

35. By these actions, Defendant violated 15 U.S.C. § 1692e (2)(A) by misstating the amount or legal status of any debt. By these actions Defendants also violated 15 U.S.C. § 1692e (10) by using deceptive means in an attempt to collect a debt which was not owed to Nationstar.

36. Defendant has been harmed by these actions in that the Complaint was accepted and the Property has been sold.

37. As a direct and proximate result of Defendants' violations, Plaintiff incurred and continues to incur damages in an amount not yet ascertained, including, without limitation, statutory damages.

### THIRD CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

38. Intentional infliction of emotional distress has been defined as outrageous conduct causing severe emotional distress with the following elements, *see Dominquez v. Equitable Life Assur. Soc. of U.S.*, 438 So. 2d 58, 59 (Fla. 3d DCA 983).

39. Element 1: The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result.

Defendant acted when it knew or should have known that an attempt to foreclose on Plaintiff's property without the legal standing to do so would cause Plaintiff emotional distress.

12

Defendant has compounded its acts regarding wrongful foreclosure with an illegal sale, its intentional acts have caused additional infliction of stress.

40. Element 2: the conduct was outrageous and is to be regarded as odious and utterly intolerable. Using documents to try to prove standing to foreclose in a climate where so many Floridians have wrongfully lost their homes to foreclosure is odious and utterly intolerable. As another Florida court has opined:

> "[An intentional infliction of emotional distress] case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim, "Outrageous!" *Food Fair, Inc. v. Anderson*, 382 So. 2d 150, 155 (Fla. 5th DCA 1980).

41. Element (3) the conduct caused the emotional distress. Defendant acted when it knew or should have known that an attempt to foreclose on Plaintiff's property without the legal standing to do so would cause Plaintiff emotional distress. Defendant has compounded its acts regarding wrongful foreclosure with an illegal sale, its intentional acts have caused additional infliction of stress.

42. Element 4: the emotional distress was severe. Defendant's actions have purposefully inflected torturous stress upon Plaintiff that has affected Plaintiff's health causing anxiety attacks, insomnia, vomiting and most everything related to physical, mental and emotional health, including damaged relationships with family and friends.

43. Defendant is liable for damages as from the onset Defendant has acted wrongfully with knowledge. Therefore, Plaintiff is faced with suffering the loss of Plaintiff's home by wrongful foreclosure, compounded by an illegal sale and impending eviction, and numerous medical maladies. As a result, Plaintiff prays the Honorable Court to restore Plaintiff's home to Plaintiff the rightful owner and three time the actual damages of the real property and Ten Million Dollars ($10,000,000.00) in punitive damages.

## FOURTH CAUSE OF ACTION

## DECLARATORY JUDGMENT

44. Plaintiff has proved beyond any reasonable doubt the subject of Plaintiff's Complaint that Defendant has acted wrongfully prior and leading up to the "sale" of Plaintiff's property, contrary to the conditions precedent of the terms of the subject Mortgage, Florida Code Annotated, the FDCPA, other Federal laws and the U.C.C.

45. Defendant has exploited and abused its alleged authority to demand a sale of Plaintiff's property in fact and deed, using the so-called "sale" as a tool and instrument of fraud. Under these circumstances this Honorable Court should give no credence whatsoever to the alleged and illegal "sale" of Plaintiff's property, the result of a carefully designed fraud and conclusively powerless to stand the scrutiny to be effective at no time.

46. Declaratory Relief is necessary and appropriate at this time because without judicial resolution all Parties herein will remain unclear and in dispute as to their respective rights, interests, and obligations. Furthermore, whether the *"Mortgage"* factually or legally amounted to assign anything whatsoever, and further whether it exists as a "Cloud" on Plaintiff's Land Record/Real Property and hence should be removed.

47. Plaintiff's "Property" is at risk of being further influenced, impacted, affected and/or wrongfully resold, transferred and/or assigned by and through Defendant named herein, any of its Agents or other individuals or Entities claiming, but factually and legally not qualifying held to, or determined as *"Bona Fide* Purchases", individuals and/or Entities.

48. On personal knowledge, Plaintiff will suffer irreparable harm in absence of the requested relief because Plaintiff is threatened with the eviction of his Property by not having had a marketable legal Title returnable to the *status quo* when it was let to Defendant. The original

*status quo* was and is unique and valuable, the loss of which cannot be fully compensated by money damages.

49.Plaintiff herein further alleges, that an actual controversy has arisen, and now exists and remains unresolved between Plaintiff and Defendant and any of its Agents as well as other individuals claiming, but factually and legally could not qualify, held to, or determined as "Bona Fide Purchasers", and other such claiming "BFPs", individuals and/or business entities concerning the legal effect and true nature of the *"Mortgage"* as being a "Cloud" on Plaintiff's Land Record/Real Estate Property, all of whom are relying on the validity and legality of subject *"Mortgage"*.

48.As such legally and equitably the "Mortgage" referenced above should be Cancelled and Expunged from Plaintiff's Land Record/Real Property Title.

## SUMMATION

Defendant has ignored and obfuscated the true issues of the Plaintiff's causes of action. This has been accomplished by Defendant's employment of misrepresentation of material facts, avoidance of addressing the actual causes of action contained in their foreclosure upon Plaintiff. Defendant cannot prove its findings of alleged facts as they are not based upon facts but on misrepresentation and hyperbole. From the onset Defendant's legal counsel, under the guise of professional responsibility have methodically moved to finalize a wrongful foreclosure. These egregious actions by Defendant are premeditated acts in order to effect spoliation of the true facts of the issues at hand to cause the destruction of Plaintiff's just causes. Spoliation is an effective litigation practice which threatens to undermine the integrity of civil trial process. It is a form of cheating which blatantly compromise the ideal of trial regarding the search for truth. In fact and deed Defendant and its legal counsel have wrought disingenuous pleadings in an

attempt to finesse and to wrongfully prejudice due process to the point that the Defendant has obviously employed the Florida Authorities who unknowingly processed a wrongful foreclosure upon the Plaintiff. Therefore, the wrongful foreclosure resulted using the Florida Authorities as an instrument and tool of fraud by Defendant resulting in fraud upon the Court and the Plaintiff.

This case should be adjudicated in favor Plaintiff because the Note was unenforceable and because the Defendant lacked legal standing under the color of law and the Domain of Fraud.

## PRAYER

WHEREFORE; Plaintiff prays the Court for Judgment, Decree and an Order and relief as against all Defendants named herein and any of their Agents:

A) For Declaratory Relief by way of a Judicial Determination as follows:

That the "Mortgage" was "Voidable" and therefore a **"Cloud"** on Plaintiff's Land Record/Real Property Title;

B) For an Order, Decree and or Judgment thereby voiding and annulling the sale of Plaintiff's real property returning the Title to the Subject Property to Plaintiff the legal rightful owner, "Canceling" and "Expunging" the relative "Mortgage", illegally Filed & Recorded from Plaintiff's Land Record/Real Property Title held, maintained and currently on record with the Martin County Recorder's Office;

C) For an Order, Decree and or Judgment thereby granting Plaintiff actual, statutory and punitive damages due as requested herein.

Respectfully presented by Plaintiff the ___3___ day of ~~October~~ Nov, 2017.

MICHAEL MILLER

16

5519 SE Reef Way
Stuart, Florida 34997
Phone: 772-341-4474
Email:

## VERIFICATION

The Plaintiff, has read the **COMPLAINT** and know the contents thereof to be true; and the same is true of Plaintiff's own knowledge, except to the matters which are therein stated on our information and belief and as to those matters, Plaintiff believes them to be true. The foregoing is true, correct, complete and not misleading.

Sealed by the voluntary act of my own hand(s) on this ___3___ day of ___11___ month, in the Year of our Lord, two thousand and Seventeen.          11-3-17

MICHAEL MILLER
5519 SE Reef Way,
Stuart, Florida 34997

Either known to me or having proper identification, Affiant personally came before me and having been duly sworn did state and affirm the above statements.

On this the ___3___ day of ~~October~~ November 2017.

NOTARY

Miroslava Hernandez
Notary Public
State of Florida
My Commission Expires 9/21/2019
Commission No. FF 920540

State of Florida                                    SEAL:
County of Martin

## SERVICE LIST

By Process of Service SUMMONS:

MR. COOPER FKA Nationstar Mortgage LLC
c/o Corporation Service Co.
1201 Hayes Street
Tallahassee, FL 32301-2525

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing COMPLAINT was furnished by process of service of SUMMONS to the above listed person on the SERVICE LIST, this _3_ day of ~~October~~ 2017.
November

Michael Miller
11-5-17

19